IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DONNA LOHR, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:11CV134 |
| | ) | |
| | ) | |
| UNITEDHEALTH GROUP, | ) | |
| INCORPORATED, | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER**

This suit arises from a dispute between Plaintiff Donna Lohr and Defendant UnitedHealth Group, Incorporated ("United") regarding Defendant's partial denial of Ms. Lohr's claim for short term disability ("STD"). Plaintiff alleges a violation of her rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461, ("ERISA"). The case is before the Court on Defendant's Motion for Summary Judgment [Doc. # 32].[1] For the reasons set forth below, the Defendant's motion for Summary Judgment will be GRANTED.

I.

Ms. Lohr has worked as a claims representative for United since 2005. R. at

---

[1] The parties stipulated that they would settle this issue on cross-motions for summary judgment. See Doc. # 25 at 3. Both parties timely filed notices of intent to file dispositive motions. See Doc. # 26; 29. Plaintiff's counsel failed to move for summary judgment, however, and instead only opposed Defendant's motion for summary judgment.

21.[2] As a benefit of her employment, Ms. Lohr received STD insurance through the UnitedHealth Group Short-Term Disability Plan (the "Plan"). Under the Plan, Ms. Lohr automatically received "Basic STD Coverage," providing STD benefits of 60% of her pre-disability earnings. Ms. Lohr also purchased "Supplemental STD Coverage," providing STD benefits of 80% of her pre-disability earnings. See Doc. # 33 at 3; Plan at 21.

Before receiving STD benefits a Plan participant must qualify as "disabled." Plan at 23. Under the terms of the Plan, in order for a participant to be considered disabled the following four conditions must be met:

- ■ You have been seen face-to-face by a Physician about your Disability within 10 business days of the first day of absence related to the Disability leave of absence;
- ■ Your physician has provided Medical Evidence that supports your inability to perform the Material Duties of your Own Occupation;
- ■ You are under the Regular and Appropriate Care of a Physician; and
- ■ Your Medical Condition is not work-related and is a Medically Determinable Impairment.

Id. at 25. In order to qualify as a "Medically Determinable Impairment" under the fourth requirement, a "physical or mental impairment must be established by Medical Evidence consisting of signs, symptoms and laboratory findings, and not only by the individual's statement of symptoms." Id. at 52. The Plan grants the Claims Administrator "the exclusive right and discretion, with respect to claims and

---

[2] The court has received the Settled Administrative Record under seal, which will be referred to as "R. at ___."

appeals, to interpret the plan's terms, to administer the plan's benefits, to determine the applicable facts and to apply the plan's terms to the facts." Id. at 11. United delegated this discretionary authority to Sedgwick Claims Management Services, Inc. ("Sedgwick"). Id. at 7.

On May 18, 2010, a CT scan of Ms. Lohr's abdomen and pelvis revealed "cystic changes to both ovaries." R. at 109. The next day, she met with her gynecologist, Dr. David Lowe. See id. at 99-100. Dr. Lowe's notes from that visit describe the ovarian masses, and state that Ms. Lohr "is asymptomatic[,] [d]enies any fever, chills, nausea, vomiting, diarrhea or constipation[,]" and has "[n]o bowel issues." Id. at 100. Ms. Lohr took paid leave on May 19 and May 20 and began her disability leave of absence on May 21, 2010. See id. at 19.

Ms. Lohr next met with Dr. Lowe on June 2, 2010 for a preoperative evaluation. See id. at 95-97. Dr. Lowe's notes indicate that he discussed a surgical plan with Ms. Lohr, and that he again determined Ms. Lohr to be "asymptomatic." Id. at 97. On June 3, Dr. Lowe faxed Sedgwick an attending physician statement, stating that Ms. Lohr was totally disabled from May 19 to June 11, 2010. See id. at 187. In the statement, Dr. Lowe described his "objective supportive findings" by referencing a "report attached," and his "subjective supportive findings" as "asymptomatic." Id. at 186. When asked how these findings affected "the patient's ability to function," Dr. Lowe responded "no work." Id. Dr. Lowe included a form stating that Ms. Lohr could not perform

3

sedentary work without accommodation, and limiting periods of sitting, standing, and walking to either half an hour or an hour. See id. at 188.

Ms. Lohr underwent surgery on June 4, 2010. Afterwards, she was discharged home, given a prescription for Vicodin, and instructed to return for a follow-up appointment in two to three weeks. See id. at 101-102. On June 16, Sedgwick notified Ms. Lohr that it had approved her claim for STD benefits for the postoperative period between June 4 and June 11. See id. at 212. On June 18, Sedgwick notified Ms. Lohr that it had denied her claim for STD benefits for the pre-operative period between May 21 and June 3, stating that "the medical information submitted does not demonstrate that you are unable to perform the material duties of your own occupation and/or that you are under the regular and appropriate care of a physician as required." Id. at 86. On June 22, Sedgwick notified Ms. Lohr that it had denied her claim for STD benefits for "the period beginning" June 12, 2010, for the same reasons stated in its June 18 letter. Id. at 123. Each of these two denial letters explained Ms. Lohr's opportunities for internal appeal to Sedgwick, included a blank appeals form, and noted Ms. Lohr's right to bring a civil suit after she exhausted her internal appeals.

On June 24, 2010, Ms. Lohr met with Dr. Lowe for a post-operative appointment. Following this appointment, Dr. Lowe sent Sedgwick what it entitled a "Letter of Appeal," stating:

> [Ms. Lohr] is still in a great deal of pain from her surgery. She had extensive adhesions removed and had borderline cancer cells. I gave

4

> her a prescription for Vicodin and recommended she continue to be out of work through July 17 to completely heal from her surgery. She is house confined while taking Vicodin. She is not to lift, push, pull, or carry more than 10 #s. She is unable to sit, stand, or walk for periods greater than 1 hr. She is to continue with pelvic rest.

Id. at 126. On July 17, Dr. Lowe submitted correspondence extending Ms. Lohr's disability to July 20, when she was to be re-evaluated. See id. at 62. On July 20, Dr. Lowe's office sent Sedgwick a form indicating that Ms. Lohr could return to work on August 1, 2010, but not explaining why this extension was required. See id. at 68.

On July 19, United requested that Ms. Lohr's disability status be reviewed by an independent reviewing physician. See id. at 65-66. On July 27, independent reviewing physician Dr. Joshua Cohen, who is board certified in Obstetrics and Gynecology, issued a report reviewing Ms. Lohr's medical history and disability status. See id. at 70-75. In forming his opinion, Dr. Cohen not only reviewed Ms. Lohr's medical records, but also spoke with Linda, Dr. Lowe's nurse practitioner, about Ms. Lohr's treatment history. See id. According to Dr. Cohen, Linda indicated that Dr. Lowe's office "did not recommend any disability prior to the surgery of 06/04/10[,] [h]owever, they honored the patient's request and they documented date of disability from 05/19/10 forward." Id. at 75. When asked about the periods following June 4, Dr. Cohen characterized Linda as having stated that "[m]ost of [Ms. Lohr's] complaints were subjective; however, we honored her request to extend her disability and we extended it I think up to about end of July

5

2010 [sic] mainly per her request and because of her subjective complaints of pain." Id. at 72. After reviewing Ms. Lohr's medical records, Dr. Cohen also noted that "[t]here are no documentations of any objective gynecological clinical findings contained in the medical record or reported during the telephone conference that would impact the employee's ability to function in her regular unrestricted occupation during the dates in question." Id. at 74. Dr. Cohen likewise noted that:

> All the findings are clinically significant during the dates from 06/04/10 through 06/11/10 and not prior or after. Of course, having ovarian cysts is clinically significant. Nevertheless, this patient had no symptoms and was clearly documented [sic] by the treating gynecologist, Dr. Lowe that prior to the surgery during the examination of 05/19/10, the patient was asymptomatic.

Id. at 74.

On July 28, Ms. Lohr submitted a handwritten appeal of "the prior denial" to Sedgwick, stating that she was diagnosed with a kiwi-sized tumor, that she had to have both her ovaries removed, and referencing the medical documentation that had previously been sent to Sedgwick from Dr. Lowe. Id. at 173. On August 2, 2010, Ms. Lohr returned to work. On August 3, 2010, Dr. Cohen supplemented his report based on additional medical records submitted by Ms. Lohr, and reached the same conclusion as he had in his July 27 report. Id. at 22-26.

Sedgwick addressed Ms. Lohr's July 28 appeal on August 11, 2010, upholding its prior denial of Ms. Lohr's claim "for the periods from May 21, 2010 through June 3, 2010, and from June 12, 2010 until your fill-time return to work date." Id. at 29. In notifying Ms. Lohr of this decision, Sedgwick also informed

6

Ms. Lohr that "[y]ou have exhausted your appeal rights under the Plan and you have a right to bring a civil action under Section 502(a) of [ERISA]." Id. at 30. On August 12, 2010, Ms. Lohr contacted the North Carolina Department of Insurance (the "Department"), informing it of her medical history and asking what recourse she had regarding her denied STD benefits. See id. at 35-36. On August 13, 2010, the Department contacted Sedgwick, noting that Ms. Lohr's claim may be an ERISA claim outside their regulatory authority but regardless requesting that Sedgwick provide them with a status report. See id. at 34. On August 23, 2010, Sedgwick responded to the Department, stating that the Plan was indeed governed by ERISA, denying all of Ms. Lohr's allegations, but also stating that "upon further review and administration of the claim, benefits have been extended through July 17, 2010." Id. at 47. The letter also stated that "Ms. Lohr's claim remains denied beginning July 18, 2010, but she will have an opportunity to appeal this denial if she so chooses." Id. at 47.

On August 26, 2010, Sedgwick sent Ms. Lohr two letters. The first notified her that her "claim has been approved beginning 6/4/2010 through 7/17/2010." Id. at 39. The second notified her that "your ongoing claim for benefits is denied for the period beginning 7/18/2010," explaining that "we have not received medical documentation to establish that your condition continues to meet the definition of disability as outlined below." Id. at 52. The second letter again described her right to appeal this denial with Sedgwick, included a blank appeals form, and described

7

her right to bring a civil action under ERISA after she exhausted her internal appeals. See id. at 52-53. Ms. Lohr did not appeal the August 26 denial.

Ms. Lohr filed this suit in January of 2011, see Doc. # 4, and it was removed to federal court on February 23, 2011. See Doc. # 1. Ms. Lohr claims that Sedgwick improperly denied her claim for disability for the period of May 21 to June 3, 2010 (the "preoperative period") and the period from July 18 to August 1, 2010 (the "disputed postoperative period"). See Doc. # 35 at 1. United has since filed for summary judgment [Doc # 32], claiming first that Ms. Lohr did not exhaust her claims as to the disputed postoperative period, and second that Sedgwick did not abuse its discretion when it denied Ms. Lohr's claims as to both periods.

II.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Holland v. Washington Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Holland, 487 F.3d at 213. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. See Anderson, 477 U.S. at 248. Summary judgment requires a determination of the sufficiency of the evidence, not

8

a weighing of the evidence. See id. at 249. In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The applicable standard of review by a district court of the denial of benefits under ERISA plans is well-settled. If a plan administrator is granted discretionary authority to determine eligibility or to construe the terms of the plan, the denial of benefits must be reviewed for abuse of discretion. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989); Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir.1997). In this case, the Plan's language gives the Claims Administrator "the exclusive right and discretion, with respect to claims and appeals, to interpret the plan's terms, to administer the plan's benefits, to determine the applicable facts and to apply the plan's terms to the facts." Plan at 11. This language unambiguously gives discretion to the Claims Administrator to determine eligibility for benefits under the plan. As such, the decision of the Claims Administrator – in this case, Sedgwick – is reviewed for abuse of discretion.[3]

The Fourth Circuit has explained the contours of the abuse of discretion

---

[3] In Section Three of Ms. Lohr's brief, Ms. Lohr's counsel claims that "Defendant arbitrarily and capriciously denied Plaintiff's benefits under the Plan," and then proceeds to claim that "the Court's review of these matters is de novo, [sic] utilizing an abuse of discretion standard based on the whole record." Doc. # 35 at 2. It is unclear what Ms. Lohr's counsel intends to communicate in these sentences, and is unclear if she disputes the applicable standard of review.

standard in the ERISA context as follows:

> First, in ERISA cases, the standard equates to reasonableness: We will not disturb an ERISA administrator's discretionary decision if it is reasonable, and will reverse or remand if it is not. Second, the abuse of discretion standard is less deferential to administrators than an arbitrary and capricious standard would be; to be unreasonable is not so extreme as to be irrational. Third, an administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence. Fourth, the decision must reflect careful attention to the language of the plan, as well as the requirements of ERISA itself.

Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008). In sum, the standard requires "administrators' decisions to adhere both to the text of ERISA and the plan to which they have contracted; to rest on good evidence and sound reasoning; and to result from a fair and searching process." Id. at 322-323. The Court of Appeals has identified a list of factors for consideration by the reviewing court in determining whether discretion has been abused:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth v. Wal-Mart Stores, Inc. Assoc. Health and Welfare Plan, 201 F.3d 335, 342-43 (4th Cir.2000).

### III.

United argues that Ms. Lohr is barred from challenging Sedgwick's denial of

her STD benefits for the disputed postoperative period since she failed to exhaust her administrative remedies under the Plan. Though ERISA does not contain an explicit exhaustion requirement, an ERISA claimant still must exhaust those administrative remedies provided for in an employee benefits plan before bringing suit under 29 U.S.C. § 1132(a)(1)(B). See Makar v. Health Care Corp. Of Mid-Atlantic, 872 F.2d 80, 82 (4th Cir. 1989). Here, the Plan states that "[y]ou must file an appeal within 180 days after you receive the claim denial from the Claims Administrator," establishes that the appeal must be filed with the Plan Administrator, and provides a comprehensive explanation of how to file such an appeal. Plan at 137-139. The Plan also makes explicit the judicially-created requirement for exhaustion, explaining a party's right to judicial review and then stating that "[c]ompleting the claim and appeals procedure is mandatory for resolving every claim and dispute arising under the Health Plan." Id. at 139. As such, under both ERISA and the terms of the Plan itself, Ms. Lohr must have appealed all denied claims to the Plan Administrator if she wishes to bring a civil challenge to the denial under 29 U.S.C. § 1132(a)(1)(B). If she did not bring such an appeal, she failed to exhaust those remedies provided by the Plan, and this court cannot hear her claim.

Sedgwick, the Plan Administrator, denied Ms. Lohr's claim for the preoperative period on June 18, 2010. See R. at 86. Ms. Lohr appealed that decision on July 28, 2010. See id. at 173. That appeal was denied on August 11,

11

2010. See id. at 29. At no point did Sedgwick issue a second decision as to the preoperative period. As such, Ms. Lohr exhausted the internal procedures for challenging her denial of benefits for the preoperative period, and now appropriately challenges that denial under 29 U.S.C. § 1132(a)(1)(B).

In denying Ms. Lohr's July 28 appeal, Sedgwick also denied Ms. Lohr's claims "from June 12, 2010 until your full-time return to work date." Id. at 29. However, it revised this opinion on August 26, sending one letter notifying Ms. Lohr that her claim was approved from June 4 to July 17, see id. at 39, and another letter notifying her that her claim was denied "for the period beginning" July 18. Id. at 52. The second letter again explained Ms. Lohr's opportunities for an appeal to the Plan Administrator, stated that she could challenge the denial in a civil action "after there has been full exhaustion of your appeal rights under the plan," and referenced a blank appeals form attached to the letter. Id. at 52-54. Ms. Lohr, however, did not appeal this decision. As such, she failed to exhaust those administrative remedies provided for in the Plan as to the disputed postoperative period.

Ms. Lohr claims that "[a]s a general rule under ERISA, the exhaustion requirement is a matter within the discretion of the trial court," citing only to Kross v. Western Elec. Co., Inc., 701 F.2d 1238 (7th Cir. 1983).[4] Doc. # 35 at 4.

---

[4] Though every other case cited by Ms. Lohr's counsel included a citation identifying the issuing court, counsel omitted any such reference when citing Kross. See Doc. # 35 at 4. Even if cross Kross supported Ms. Lohr's position, it is from the

12

However, the Fourth Circuit has held that "an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits." Makar v. Health Care Corp. of Mid-Atlantic, 872 F.2d 80, 82 (4th Cir. 1989).[5] The Fourth Circuit has not indicated that district courts have the discretion to waive the exhaustion requirement unless an exception applies.

An exception to the exhaustion requirement exists when "there is clear and positive evidence that the [administrative] remedies are futile or useless." Kunda v. C.R. Bard., Inc, 671 F.3d 464, 472 (4th Cir. 2011) (quotations omitted). "The futility exception . . . is quite restricted, and has been applied only when resort to administrative remedies is 'clearly useless.'" Kern v. Verizon Commc'ns, Inc., 381 F.Supp.2d 532, 537 (N.D. W. Va. 2005) (quoting Communication Workers of America v. AT&T, 40 F.3d 426, 433 (D.C. Cir.1994)). Ms. Lohr's brief mentions the futility exception, and one could construe it as arguing that the exception should apply in this case.[6] See Doc. # 35 at 4. However, the only facts cited in

---

Seventh Circuit, and is not controlling.

[5] Ms. Lohr's counsel cites no legal authority supporting her claim that "courts may waive the [exhaustion] requirement" if "the facts of the case do not promote the policy of judicial economy and efficient resolution of claims under an employee benefits plan[.]" Doc. # 35 at 4. Nor does counsel explain how permitting claimants to ignore benefit plans' internal dispute resolution procedures and instead go straight to federal court would "promote the policy of judicial economy and efficient resolution of claims" when it likely would have the opposite result.

[6] Ms. Lohr's counsel mentions the futility exception as an instance in which her novel exhaustion exception for "judicial economy and efficient resolution of claims" is

13

support of the exception's application are "the short period of benefits in question[,]" "the clear lack of prejudice to Defendant[,]" and the allegedly resulting fact that "an administrative appeal would not be the best use of the parties' resources." Id. at 5. These assertions are not relevant to whether or not an internal appeal would be futile. Nor does an independent review of the record reveal clear and positive evidence of futility. Ms. Lohr received one unfavorable opinion from Sedgwick on appeal, but also received favorable results after further pursuing her claim with the North Carolina Department of Insurance. There is no evidence that Sedgwick would have approached a second appeal with a closed mind.[7] Since there is not clear and positive evidence that it would have been futile to appeal Sedgwick's denial of Ms. Lohr's claim, the exhaustion requirement is not waived as a result of futility.

Ms. Lohr also claims that "[t]he Fourth Circuit has excused plaintiffs from the requirement of exhaustion of all administrative remedies when the plan administrator did not effectively communicate the procedure for doing so." Doc. #

---

"especially true," and then claims broadly that "this logic would clearly apply in [Ms. Lohr's] case." Doc. # 35 at 4-5.

[7] Those cases finding clear and positive evidence that an internal appeal would have been futile address significantly clearer fact patterns than those at issue. For example, sufficient evidence of futility was found in O'Bryhim v. Reliance Standard Life Ins. Co., 997 F. Supp. 728 (E.D. Va. 1998), a case cited by Ms. Lohr's counsel. In that case, a claimant had previously filed three unsuccessful internal appeals, successfully brought suit in federal court, and had the Plan Administrator's appeals counsel ignore the district court's findings of fact on remand. In order to exhaust internal remedies, the claimant would have had to again appeal that decision to the same individuals on the appeals counsel who had issued the most recent denial.

14

35 at 4. The district court opinion cited by Ms. Lohr does demonstrate that exhaustion requirements can be waived if a plan administrator "failed to comply with the notice provisions of 29 C.F.R. § 2560.503–1(g)(1)." Hall v. Tyco Intern. Ltd., 223 F.R.D. 219, 238 (M.D.N.C. 2004) (exhaustion waived when "not only did Plaintiff not receive a letter complying with 29 C.F.R. § 2560.503–1(g)(1), he did not receive a letter at all"). Here, however, Ms. Lohr received a letter notifying her that her claim had been denied, explaining her opportunities for internal appeal, and complying with all other relevant regulatory requirements. See R. at 52-53. Ms. Lohr cannot claim insufficient notice as grounds for waiving the exhaustion requirement in this case.

Ms. Lohr did not exhaust internal administrative remedies as to the disputed postoperative period, and no exception to the exhaustion requirement applies. As such, United's motion for summary judgment as to the disputed postoperative period is GRANTED.

IV.

United also argues that its decision to deny Ms. Lohr's STD claims for both of the periods at issue "was reasonable, in that it was consistent with the terms of the Plan, it was the result of principled decision making, and it was supported by substantial evidence." Doc. # 33 at 12. Since Ms. Lohr failed to exhaust administrative remedies as to the disputed postoperative period, the court only addresses the appropriateness of Sedgwick's decision as to the preoperative period.

15

Sedgwick did not abuse its discretion when it denied Ms. Lohr disability benefits for the preoperative period. As noted above, in order to be considered disabled under the Plan, a claimant's physician must have "provided Medical Evidence that supports your inability to perform the Material Duties of your Own Occupation," and the claimant's medical condition must be a "Medically Determinable Impairment." Plan at 25. In order to qualify as a "Medically Determinable Impairment," a "physical or mental impairment must be established by Medical Evidence consisting of signs, symptoms and laboratory findings, and not only by the individual's statement of symptoms." Id. at 52.

There were somewhat conflicting medical opinions as to Ms. Lohr's disability during the preoperative period. Ms. Lohr's treating physician, Dr. Lowe, claimed that Ms. Lohr was disabled during that period. Reviewing physician Dr. Cohen determined that she was not. As the Plan Administrator, it was Sedgwick's duty to resolve such a conflict. See Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan, 201 F.3d 335, 345 (4th Cir. 1999) (When confronted with a "record of conflicting opinion, it was within the discretion of the [plan administrator]–indeed it was the duty of that body–to resolve the conflicts."). As to the preoperative period, Sedgwick resolved the differences in opinion in favor of Dr. Cohen, finding that there was "no documentation of any objective gynecological clinical findings . . . that would impact [Ms. Lohr's] ability to function in [her] regular unrestricted

16

occupation." R. at 29.  Sedgwick provided ample explanation for its conclusion to credit Dr. Cohen's opinion over Dr. Lowe's.  For example, it considered the fact that while Dr. Lowe stated that Ms. Lohr was disabled starting on May 19, he originally recommended disability starting on June 4, and only backdated the recommendation at Ms. Lohr's request.  Records likewise indicate that Dr. Lowe did not authorize a leave of absence before Ms. Lohr's surgery on June 4, noted on May 19 that "[s]he is asymptomatic," and noted on June 2 that "[c]urrently, she is asymptomatic." Id. at 97; 100.  Indeed, while Sedgwick's denial conflicts with Dr. Lowe's ostensible conclusion as to whether or not Ms. Lohr was "disabled" during the preoperative period, it does not appear to conflict with his evaluation of her underlying medical conditions.  Considering Ms. Lohr's records in light of the Plan's definition of disability, Sedgwick did not abuse its discretion in crediting Dr. Cohen's opinion over Dr. Lowe's and finding that Ms. Lohr was not disabled during the preoperative period.

Ms. Lohr states that "[d]eference should be given to treating physician's assessment of a patient's condition."  Doc. # 35 at 2.  No legal authority is cited in support of this proposition.  It directly contradicts the Supreme Court, which has unanimously held that when determining eligibility for ERISA disability benefits, "plan administrators are not obliged to accord special deference to the opinions of treating physicians."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  Ms. Lohr neither acknowledges this authority nor offers any reason as to

17

why controlling Supreme Court precedent should be disregarded. Sedgwick did not abuse its discretion by failing to give deference to Dr. Lowe's opinion as a treating physician.

Ms. Lohr also states that Dr. Cohen's "alleged finding" as to the lack of objective medical evidence supporting her disability "failed to review the entire record from Plaintiff's submissions as well as those of her medical providers." Doc. # 35 at 3. There is no mention of any specific aspect of the record which Dr. Cohen failed to review. Dr. Cohen's report in fact reveals a detailed analysis of Ms. Lohr's medical files, as well as an independent inquiry with Dr. Lowe's office as to the specific foundations of his opinion regarding her disability. See R. at 71-75. Dr. Cohen's opinion is not invalid for failing to review the entire record.

Ms. Lohr also argues Sedgwick's decision "fails to take into consideration the psychological effects of a cancer diagnosis on [Ms. Lohr's] ability to concentrate on her work tasks as well." Doc. # 35 at 2. Again, in order to qualify as disabled under the Plan, Ms. Lohr would have needed to establish that she suffered from a "Medically Determinable Impairment" by putting forth "Medical Evidence consisting of signs, symptoms and laboratory findings, and not only by the individual's statement of symptoms." Plan at 52. Ms. Lohr does not direct the court to any medical evidence indicating that Ms. Lohr suffered from any relevant psychological condition. Ms. Lohr does not appear to have claimed a psychological disability until bringing this suit, and a review of the record reveals no medical evidence supporting

18

such a finding. Sedgwick did not abuse its discretion when it found no evidence of psychological disability in the preoperative period.

Sedgwick did not abuse its discretion when it denied Ms. Lohr's claim for STD for the preoperative period. The denial was consistent with the well-reasoned opinion of reviewing physician Dr. Cohen. While it was inconsistent with the ultimate conclusion reached by Ms. Lohr's treating physician Dr. Lowe, it was nonetheless consistent with his underlying medical evaluations when viewed in light of the Plan's definition of "disability." Since the denial adhered to both the text of ERISA and the Plan, since it rested on good evidence and sound reasoning, and since it resulted from what appeared to be a fair and searching process, United's Motion for Summary Judgment as to the preoperative period is GRANTED.

V.

For the reasons set forth above, Defendant's Motion for Summary Judgment [Doc. # 32] is GRANTED.

This the 31st day of January, 2013.

                                            /s/ N. Carlton Tilley, Jr.
                                      Senior United States District Judge